UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MYLAN INC. and MYLAN PHARMACEUTICALS INC.,**<br><br>　　　　　　　　**Plaintiffs,**<br><br>v.<br><br>**APOTEX INC., and APOTEX CORPORATION,**<br><br>　　　　　　　　**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Mylan Inc. and Mylan Pharmaceuticals Inc. (collectively, "Mylan"), allege the following against Apotex Inc. and Apotex Corporation (collectively, "Apotex"):

**I.    NATURE OF THE ACTION**

1.    By this action, Mylan seeks to halt Apotex's unlawful interference with Mylan's adjudicated status as the holder of exclusive rights to market and sell generic paroxetine hydrochloride extended-release tablets.  At a trial in this Court in a related case in March 2014, a jury determined that GlaxoSmithKline ("GSK") had breached Mylan's exclusive license rights by supplying Apotex with branded Paxil CR® to be sold as an authorized generic in competition with Mylan's generic paroxetine product.  Even after learning of the verdict, Apotex has apparently insisted that GSK continue to supply it with Paxil CR®, in clear contravention of the jury's verdict.  Mylan was thus forced to return to this Court to seek a permanent injunction, to bring a halt to GSK's and Apotex's continued violations of Mylan's adjudicated rights.  On July 16, 2014, the Court granted

Mylan's motion, ordering GSK immediately to cease deliveries of product for resale by Apotex.

2. Even with a Court order directing a halt to GSK and Apotex's unlawful supply arrangement, Apotex has simply thumbed its nose at the rule of law. Although Mylan immediately brought the Court's July 26, 2014 Order to Apotex's attention, and asked that it stop selling AG Paxil CR® to give effect to the Court's order, Apotex has continued to sell the now-enjoined product. In fact, since issuance of the July 16, 2014 permanent injunction, Apotex has been scrambling to dump large quantities of authorized generic Paxil CR® at reduced prices, in a desperate, last-ditch effort to squeeze every last penny of profit it can from product unlawfully secured from GSK. Indeed, Mylan has reason to believe that Apotex built up inventories of Paxil CR® prior to entry of the permanent injunction, anticipating that the Court would eventually shut down its illegal scheme.

3. By flooding the market with product it should never have obtained in the first place, Apotex is attempting to effect an end-run around the jury's verdict and the Court's injunction order. The clear import of the order is that Mylan should immediately be restored to its position as the exclusive holder of rights to market and sell generic paroxetine products. Apotex's actions fly in the face of that order.

4. Mylan is suffering immediate and irreparable harm as a result of Apotex's actions. Pursuant to its license agreement with GSK, Mylan enjoys exclusive rights to market and sell generic paroxetine hydrochloride products, and a jury has conclusively determined that GSK's supply of authorized generic Paxil CR® for resale by Apotex violates those rights. Apotex's unjustifiable refusal to give effect to the jury's verdict and

cease sale of authorized generic Paxil CR® has caused Mylan to lose customers, profits and market share. Now, by dumping large volumes of product at reduced prices, Apotex is causing Mylan irreparable harm, jeopardizing Mylan's customer goodwill and unreasonably eroding market prices to levels at which Mylan's prices and profit margins will be negatively and irretrievably impacted.

5.      Apotex has willfully and without justification induced GSK to breach its license agreement with Mylan, and judgment for Mylan should be entered to ensure, once and for all, that Apotex honors the rule of law.

## II.    THE PARTIES

6.      Plaintiff Mylan Inc. is a corporation organized under the laws of Pennsylvania, having a place of business at 1000 Mylan Boulevard, Canonsburg, Pennsylvania 15317.

7.      Plaintiff Mylan Pharmaceuticals Inc. is a corporation organized under the laws of West Virginia, having a place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26504.

8.      Upon information and belief, Defendant Apotex Inc. is a corporation organized and existing under the laws of Canada and has its principal place of business at 150 Signet Drive, Ontario, Canada, M9L IT9.

9.      Upon information and belief, Defendant Apotex Corporation is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.

10.     Upon information and belief, Apotex Inc. and Apotex Corporation are registered to do business in New Jersey.

3

11. On information and belief, Apotex Inc. and Apotex Corporation are in the business of, among other things, marketing and distributing pharmaceutical products in the State of New Jersey and throughout the United States, including the very product at issue in this case.

12. Furthermore Apotex Corp. is registered with the New Jersey Department of Health and Senior Services to sell generic pharmaceutical products in New Jersey (Wholesale License No. 5003192).

### III. JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and is between a citizen of a state, on the one hand, and a citizen of another state and a citizen of a foreign state, on the other.

14. This Court has personal jurisdiction over Apotex because, *inter alia*, it has committed (i) tortious interference, (ii) interference with contractual relations, (iii) interference with prospective economic benefit, and (iv) inducement of breach of contract, in the State of New Jersey, all to the detriment and harm of Mylan. Moreover, the agreement with which Apotex is interfering is governed by New Jersey law.

15. In addition, the Court has personal jurisdiction over Apotex by virtue of its contacts with the State of New Jersey. For example:

- On information and belief, Apotex is in the business of manufacturing, marketing, importing, preparing and selling generic pharmaceuticals (including Paroxetine CR) which it distributes in the State of New Jersey and throughout the United States.

- Apotex Corp. is registered with the New Jersey Department of Health and Senior Services to sell generic pharmaceutical products in New Jersey (Wholesale License No. 5003192).

4

- Apotex markets and distributes Paroxetine CR in New Jersey, and its Paroxetine CR product is prescribed by practicing physicians and dispensed by pharmacies located within New Jersey, all of which have a substantial effect on New Jersey.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## BACKGROUND

### IV.  THE AGREEMENT BETWEEN MYLAN AND GSK

17. GSK originally marketed and sold Paxil CR®, the brand name for paroxetine hydrochloride extended-release oral tablets, in strengths of 12.5 mg, 25 mg and 37.5 mg, approved for the treatment of major depressive disorder.

18. On June 25, 2007, GSK sued Mylan for alleged infringement of the '640 patent based on Mylan's filing of an Abbreviated New Drug Application ("ANDA") directed to a generic version of Paxil CR®. That lawsuit, Civil Action No. 07-2939 (the "'640 Patent Action"), was filed in this Court.

19. The Patent License and Settlement Agreement, as amended (the "Agreement") at issue in this case, which was executed on August 10, 2007, resulted from the settlement of the '640 Patent Action.

20. Section II(c) of the Agreement provided that the patent licenses set forth therein (providing Mylan a license under the '640 patent to "make, have made, sell, have sold and import Mylan Generic Paroxetine Products") "shall be exclusive (even to GSK) in favor of Mylan for all Generic Paroxetine Products."

21. On September 14, 2007, GSK and Mylan entered into a First Amendment to the Agreement (the "First Amendment").

22. On September 27, 2007, GSK and Mylan entered into a Second Amendment to the Agreement (the "Second Amendment"), which slightly modified Mylan's

5

exclusivity rights under the Agreement. Pursuant to the Second Amendment at Section 2, Mylan retained exclusivity rights to the patent licenses, subject to two limited exceptions:

a. "If GSK receives a Third Party Notification and GSK initiates an action for patent infringement, GSK can enter into a settlement agreement with respect to such action at any time and Mylan agrees to waive its exclusivity under Section II(c) in order to permit GSK under such settlement agreement to grant such Third Party a non-exclusive license under the GSK Patents to sell Generic Paroxetine Product(s) in the dosage form(s) specified in the Third Party's ANDA, on which the Third Party Notification is based, effective as of 180 days after the date on which Mylan launches Generic Paroxetine Products for sale in the Territory.

b. Also, GSK or its Affiliate may commence marketing and selling generic paroxetine hydrochloride controlled or modified release products pursuant to its Paxil ® CR NDA ("Authorized Generic Products") at the end of the second year after Mylan launches its Generic Paroxetine Products."

23. Under the Second Amendment to the Agreement, Mylan's license remains exclusive unless and until either of the exceptions provided in the Second Amendment occurs.

### V.  MYLAN'S SALE OF GENERIC PAROXETINE HYDROCHLORIDE EXTENDED-RELEASE PRODUCTS

24. In accordance with the Agreement, Mylan launched generic paroxetine hydrochloride extended-release tablets in mid-May 2008.

25. Since May 2008, the generic paroxetine hydrochloride extended-release tablets product has been an important component of Mylan's portfolio of drug products, and one of Mylan's most successful products in the United States.

26. Since May 2008, Mylan's generic paroxetine hydrochloride extended-release tablets have generated hundreds of millions of dollars in sales in the United States.

27. Since May 2008, Mylan has been the ***only*** company lawfully offering generic paroxetine hydrochloride extended-release oral tablets to the public because it is

6

the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets.

28. In September 2010, Mylan learned from a customer that Apotex was entering the market with an authorized generic version of Paxil CR®.

29. Because allowing Apotex to market and sell an authorized generic version of Paxil CR® violated the Agreement, Mylan immediately contacted GSK and asked it to cease its supply to Apotex. GSK refused, stating that it had entered in to an agreement with Apotex to settle claims Apotex had asserted against GSK for GSK's misuse of patents.

30. Mylan promptly sued GSK in this Court on September 20, 2010 alleging breach of contract. Simultaneously, Mylan sued Apotex for tortious interference with the Agreement, and inducement to breach the Agreement. This lawsuit, captioned *Mylan Inc. et al. v. SmithKline Beecham Corp et al.*, Case No. 10-4809 (JAP) (LHG), will hereinafter be called the "Prior Contract Litigation."

31. Because Apotex claimed that it had no knowledge of the specific provisions of the Agreement at the time it settled its claims against GSK, this Court entered summary judgment in Apotex's favor in the Prior Contract Litigation. It also entered summary judgment in GSK's favor.

32. On appeal, the U.S. Court of Appeals for the Third Circuit affirmed summary judgment as to Apotex but reversed (in part) as to GSK, holding that Mylan's breach of contract claim should be tried to a jury in this Court.

**VI. THE JURY VERDICT CONFIRMS THAT GSK'S SALES OF AUTHORIZED GENERIC PAROXETINE CR TO APOTEX BREACHED THE AGREEMENT**

33. Mylan tried its breach of contract claim against GSK in the Prior Contract Litigation to a jury in March 2014. On March 25, 2014, the jury found that, by supplying

7

Apotex with the authorized generic of Paxil CR® for sale to downstream customers, GSK had breached the Agreement. The jury awarded Mylan damages in the amount of $106,700,000.

34. After the jury's verdict, Mylan contacted GSK to seek confirmation that it would cease to supply Apotex with the authorized generic of Paxil CR® in light of the determination that such conduct breached the Agreement. GSK explicitly refused to confirm that it would no longer supply Apotex with the authorized generic of Paxil CR®, notwithstanding the jury's verdict. Mylan therefore moved the Court to enter a permanent injunction.

35. On July 16, 2014, this Court issued an Order permanently enjoining GSK from continuing to supply Apotex with the authorized generic of Paxil CR® for the life of the '640 patent. In an Opinion issued on that same date, the Court held that Mylan had demonstrated that "it has suffered irreparable injury and that monetary damages are inadequate to compensate it for such injury."

### VII. APOTEX TORTIOUSLY AND UNLAWFULLY INTERFERES WITH THE AGREEMENT AND MYLAN'S PROSPECTIVE ECONOMIC ADVANTAGE AND INDUCES GSK TO CONTINUE TO BREACH THE AGREEMENT

36. At least by virtue of its involvement in the Prior Contract Litigation, Apotex has actual knowledge of the Agreement between Mylan and GSK, including actual knowledge of the Second Amendment thereto. Beginning no later than the date on which the Prior Contract Litigation was commenced, on September 20, 2010 Apotex was aware of Mylan's exclusive license rights under the Agreement[1].

---

[1] Indeed, upon information and belief, Apotex had knowledge of the Agreement even before the Prior Litigation was filed because, as came out at trial in the Prior Litigation, the terms of the settlement between Apotex and GSK required GSK to funnel to Apotex royalties paid by Mylan to GSK under the Agreement.

37. Apotex also had knowledge that GSK's supply of the authorized generic of Paxil CR® to Apotex, for Apotex to market and sell in competition with Mylan, satisfied neither of the two narrow exceptions to exclusivity, as described above. Notwithstanding Apotex's knowledge of the Agreement and the fact that GSK's supply of Paxil CR® breached Mylan's rights thereunder, upon information and belief, Apotex insisted that GSK continue to supply it with product, which GSK did.

38. Despite Apotex's knowledge at least as early as September 20, 2010, upon information and belief, Apotex appears to have taken steps earlier this year to ensure that it can continue to market and sell the authorized generic of Paxil CR®, even if GSK had an unfavorable outcome in the Prior Litigation. Indeed, publicly available information has revealed that, even after learning about the Agreement and Mylan's rights thereunder (but prior to trial in the Prior Contract Litigation), Apotex and GSK have taken steps designed to ensure a continued supply of product to authorized generic of Paxil CR® to Apotex, *even if it were determined that such supply breached the Agreement*.

39. This appears to be evidenced by the publicly available information demonstrating that GSK recently transferred certain of its rights in the Paxil CR® brand to Apotex. For example, the FDA Orange Book now lists Apotex as the NDA holder for Paxil CR®. The assignment records at the United States Patent Office also indicate that certain of the Orange Book listed patents for Paxil CR® have been assigned to Apotex by GSK. Upon information and belief, the steps taken by Apotex and GSK could be such that it makes both the jury verdict and permanent injunction futile.

40. Representatives of Apotex attended much of the March 2014 trial in the Prior Contract Litigation, and Apotex has actual knowledge of the jury's verdict, which

confirmed that GSK's supply of the authorized generic of Paxil CR® to Apotex breached the Agreement.

41. Notwithstanding its direct knowledge of the trial proceedings, Apotex, upon information and belief, again insisted that GSK continue to supply Apotex with the authorized generic of Paxil CR®, even after the jury returned a verdict confirming that such supply was unlawful. Once again, GSK obliged Apotex, supplying product in direct contravention of the jury's verdict.

42. Apotex's demand that GSK continue to supply it with the authorized generic of Paxil CR® in the face of the jury verdict constitutes a willful and wanton disregard for the legal process, Agreement and Mylan's lawful rights thereunder, without just cause or excuse.

43. Apotex, through its counsel, was also notified of the Court's subsequent permanent injunction on the day that it issued. In its letter notifying Apotex's counsel of the Court's Order, Mylan requested that, in light of the injunction, Apotex immediately cease selling the authorized generic of Paxil CR® unlawfully supplied by GSK. Apotex has expressly refused, via letter dated July 17, 2014, to comply with Mylan's request.

44. Even worse, it appears that, since learning of the permanent injunction, Apotex has undertaken a campaign to dump its accumulated inventory of authorized generic Paxil CR®. Upon information and belief, in the days immediately following entry of the injunction order, Apotex began offering large volumes of product to customers at reduced prices. Apotex's efforts appear to be designed to garner as much profit as it can from these illicit sales, before any action can be taken to stop it.

45. Upon information and belief, despite knowing of the Agreement, and Mylan's adjudicated rights thereunder, Apotex continued to induce GSK to violate the Agreement. These aforementioned actions interfere with Mylan's exclusivity for generic paroxetine hydrochloride extended-release tablets, and do so for Apotex's profit.

46. Upon information and belief, Apotex undertook these actions with the knowledge that it would require GSK to engage in unlawful conduct without any just cause or excuse. Upon information and belief, Apotex undertook these actions with the knowledge and intent that such actions would harm Mylan.

47. Apotex's actions are causing Mylan to suffer damages by the improper loss of its exclusivity in the generic market, including irretrievable loss of market share and customers, and through erosion in prices of the generic paroxetine hydrochloride extended-release tablets. Mylan has been adjudicated the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and Apotex's unlawful actions have caused and are causing Mylan to suffer injury that is not compensable in monetary terms.

## CLAIMS

### VIII. FIRST CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH THE AGREEMENT

48. Mylan repeats the allegations contained in Paragraphs 1 through 47 above as if set forth fully herein.

49. Although not a party to the Agreement, Apotex had actual knowledge of the Agreement between Mylan and GSK, including Section 2 of the Second Amendment.

50. Apotex has actual knowledge that its arrangement with GSK breaches the Agreement between Mylan and GSK.

51. Upon information and belief, Apotex, in spite of its knowledge of the Agreement and that GSK's supply to Apotex of the authorized generic of Paxil CR® is unlawful and breaches the Agreement, has insisted that GSK continue to supply Apotex with the authorized generic of Paxil CR® and has continued to sell the authorized generic of Paxil CR® to the downstream marketplace.  Apotex made these demands and sales intentionally, and knowing that the demand and sales would cause GSK to breach the Agreement with Mylan, cause harm to Mylan and interfere with the Mylan and GSK relationship.

52. Upon information and belief, Apotex's actions are without justification or excuse and were taken with a wanton disregard for Mylan and its adjudicated rights under the Agreement.

53. Mylan has suffered and will suffer harm due to Apotex's interference with the contractual relationship between Mylan and GSK and causing GSK to breach the Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets.  Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

### IX.    SECOND CAUSE OF ACTION: UNLAWFUL INTERFERENCE WITH CONTRACTUAL RELATIONS

54. Mylan repeats the allegations contained in Paragraphs 1 through 53 above as if set forth fully herein.

55. Upon information and belief, Apotex, in spite of its knowledge of the Agreement, and that GSK's supply to Apotex of the authorized generic of Paxil CR® is unlawful and breaches the Agreement, has demanded that GSK continue to supply Apotex with the authorized generic of Paxil CR® and that GSK transfer Mylan's royalties and certain rights in Paxil CR® to Apotex.

56. Apotex's actions constitute unjustified interference with Mylan's rights under the Agreement.

57. Apotex's actions are without justification or excuse and go beyond generally accepted business standards.

58. Mylan has suffered and will suffer harm due to Apotex's interference with the business relationship between Mylan and GSK and causing GSK to breach the Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets. Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

X.   **THIRD CAUSE OF ACTION: UNLAWFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

59. Mylan repeats the allegations contained in Paragraphs 1 through 58 as if set forth fully herein.

60. As a result of its Agreement with GSK, and its exclusive rights thereunder, Mylan had a reasonable expectation of economic benefit or advantage through July of 2016

(the life of the '640 patent), including but not limited to monetary and economic benefit from the exclusive sale of its generic paroxetine hydrochloride extended release tablets.

61. As a result of at least the Prior Contract Litigation, Apotex had actual knowledge of the Agreement between Mylan and GSK, including Section 2 of the Second Amendment, and the exclusive rights conferred to Mylan thereunder.

62. Apotex also had actual knowledge that Mylan expected to receive substantial monetary and economic benefit that the exclusivity provisions of the Agreement provided.

63. Upon information and belief, through its demand that GSK continue to supply Apotex with the authorized generic of Paxil CR®, and through its continued sale of the authorized generic of Paxil CR® to the downstream marketplace, Apotex has wrongfully and without justification interfered with the exclusive economic benefit that Mylan should have received under the Agreement.

64. Had Apotex not demanded that GSK continue to supply Apotex with the authorized generic of Paxil CR® and continued sale of the authorized generic of Paxil CR® to the downstream marketplace, Mylan would have realized greater sales and profits for its paroxetine hydrochloride extended release tablets.

65. Mylan has and will suffer harm due to Apotex's interference with Mylan's exclusivity under the Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets. Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the

generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

### XI. FOURTH CAUSE OF ACTION: INDUCEMENT TO BREACH OF CONTRACT

66. Mylan repeats the allegations contained in Paragraphs 1 through 65 above as if set forth fully herein.

67. Since entering into the Agreement, Mylan has successfully marketed, sold, manufactured and distributed generic paroxetine hydrochloride extended-release tablets in dosages of 12.5 mg, 25 mg and 37.5 mg, and this product has become one of Mylan's most successful.

68. Apotex had actual knowledge of the Agreement and the amendments thereto, including actual knowledge that the Agreement and Amendments provided Mylan exclusive rights in the market for generic paroxetine hydrochloride extended-release tablets.

69. By virtue of the Prior Contract Litigation and the jury verdict, Apotex also has actual knowledge that its relationship with GSK for paroxetine hydrochloride extended-release tablets breaches the Agreement.

70. Upon information and belief, despite knowing that under the Agreement Mylan has certain exclusive rights to the generic paroxetine hydrochloride extended-release tablets, and that the GSK and Apotex relationship unlawfully breaches the Agreement, Apotex intentionally caused GSK to breach the Agreement by, upon information and belief, demanding that GSK continue to supply Apotex with paroxetine hydrochloride extended-release tablets.

71. Apotex's aforementioned actions are knowing, intentional and without justification or excuse.

72. Mylan has and will suffer harm due to Apotex's inducement of GSK to breach the Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets. Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

## PRAYER FOR RELIEF

WHEREFORE, Mylan prays for judgment as follows:

a. That Apotex has maliciously, intentionally and tortiously interfered with Mylan's Agreement with GSK;

b. That Apotex unlawfully interfered with Mylan's Agreement with GSK;

c. That Apotex has unlawfully interfered with Mylan's prospective economic advantage under the Agreement;

d. That Apotex has maliciously, willfully and knowingly induced GSK to breach the Agreement;

e. That Apotex, its officers, agents, servants and employees and those persons in active concert or participation with any of them, be temporarily restrained and preliminarily and permanently enjoined from commercially manufacturing, developing, marketing, distributing, selling or offering for sale a generic or authorized generic paroxetine hydrochloride extended-release tablets;

16

f.  That any generic paroxetine hydrochloride extended-release tablets manufactured, developed, distributed, sold or offered for sale by Apotex after the date of the jury verdict be recalled;

g.  That Mylan be awarded monetary damages in an amount to be determined at trial;

h.  That Mylan be awarded its attorneys' fees and costs;

i.  That Mylan be awarded punitive damages from Apotex; and

j.  That Mylan be awarded such other and further relief as this Court deems just and proper.

### XIV.  CERTIFICATION PURSUANT TO L.CIV.R. 11.2

Plaintiffs, by their undersigned counsel, hereby certify pursuant to L. Civ. R. 11.2 that Apotex's actions in connection with the Agreement are not the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding.  The Prior Contract Litigation discussed above in paragraph 26 is a separate action pending in the United States District Court for the District of New Jersey, to which Apotex is not a party.

### XV.  DEMAND FOR JURY TRIAL

Mylan hereby demands a trial by jury for all the issues so triable.

Dated: July 18, 2014

Respectfully submitted,

MYLAN INC. and
MYLAN PHARMACEUTICALS INC.

Respectfully submitted,

/s/ John Michael Vazquez
---

John Michael Vazquez, Esq.
**CRITCHLEY, KINUM & VAZQUEZ**
75 Livingston Avenue, 3rd Floor
Roseland, NJ 07068
Telephone: (973) 422-9200
Facsimile: (973) 422-9700


-------and---------

Frank G. Smith, III., Esq. *(pro hac vice)*
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Wade G. Perrin, Esq.
Michael E. Johnson, Esq. *(pro hac vice)*
Natalie C. Clayton, Esq. *(pro hac vice)*
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

LEGAL02/34973518v1