Eric I. Abraham
Christy L. Saveriano
HILL WALLACK LLP
202 Carnegie Center
Princeton, NJ  08543
Telephone:  609-924-0808
Facsimile:  609-452-1888

James Matthews *(pro hac pending)*
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3197
Facsimile: (617) 261-3175

Attorneys for APOTEX INC. and
APOTEX CORPORATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MYLAN INC., AND MYLAN PHARMACEUTICALS INC., <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX INC. AND APOTEX CORPORATION <br><br> Defendants. | Civil Action No.14-4560 |

## APOTEX'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY</u>

### PRELIMINARY STATEMENT

The discovery Mylan seeks to obtain on an expedited basis is discovery of information that this Court refused to require Apotex to provide to Mylan when it entered the Preliminary Injunction.  Yet Mylan has failed to articulate any reason whatsoever why the Court should

1

revisit this ruling and now grant Mylan the extraordinary relief of expedited discovery of this very same information.  Instead, Mylan simply argues that there is nothing unusual about its request.  This despite that the Court has already rejected its request for this information, and despite that the expedited discovery Mylan seeks to obtain would require a non-party to appear for a deposition on August 29, and would require Apotex to produce documents and attend a deposition within a mere 28 days.

Expedited discovery is an extraordinary remedy warranted in the narrowest of circumstances -- for example, in advance of a preliminary injunction hearing to assist the Court and parties with that limited and expedited relief.  Mylan cites no authority to support its claim that expedited discovery is appropriate here, where Mylan seeks to recover money damages and where a preliminary injunction has already entered to prevent any injury that may not be compensable by an award of money damages.  Nor has Mylan cited a single case to support its suggestion that it may use expedited discovery to fish for evidence of Apotex' alleged noncompliance with the extant preliminary injunction.[1]  And, to be clear, Mylan has no evidence of non-compliance.

Apotex is in full compliance with the Temporary Restraining Order this Court entered on July 22, 2014, as well as the Preliminary Injunction this Court entered on July 28, 2014.

---

[1] Mylan's suggestion that the Court has already "indicated that expedited discovery might be appropriate to confirm Apotex's compliance with the recall order" mischaracterizes the cited statements made by the Court in connection with the exchange of information between the parties in advance of the hearing on the preliminary injunction.  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 4 and July 28, 2014 Hearing Tr., at 5: 14-25; 6 1-25; and 7: 1-14.  No mention is made in any portion of the transcript of any "expedited discovery."  Instead, the Court merely indicates its expectation that the parties will voluntarily exchange certain information about the logistics of the recall.  In striking a portion of Paragraph 1 and all of Paragraph 3 in Mylan's Proposed Order Converting Temporary Restraining Order to a Preliminary Injunction, the Court expressly declined to require Apotex to provide the information Mylan now seeks to obtain through expedited discovery, clearly suggesting that it did not expect Apotex to exchange such information "voluntarily" and nowhere suggesting that Mylan would be entitled to obtain such information through "expedited discovery."

Mylan's expedited discovery motion seeks access to information that this Court expressly denied Mylan in its July 28 Preliminary Injunction Order, and which would allow Mylan to access Apotex's confidential customer lists and order histories for Mylan's own competitive advantage. Mylan's Motion for Expedited Discovery is thus wholly improper and should be denied in its entirety.

## PROCEDURAL POSTURE

Mylan commenced this action against Apotex on July 18, 2014.  Apotex has not yet filed a responsive pleading, which is not due until August 26, 2014.

On July 22, 2014, this Court entered a Temporary Restraining Order enjoining Apotex from "continuing to distribute, market, sell, or offer to sell AG Paxil CR® to anyone," "purchasing or offering to purchase AG Paxil CR® from GSK," or "otherwise interfering with Mylan's adjudicated rights." See July 22, 2014, Temporary Restraining Order (the "July 22 Order" or "Temporary Restraining Order").  In addition, the Court ordered Apotex to "recall any AG Paxil CR® product shipped to its downstream customers . . . since . . . July 16, 2014." Id. On July 28, 2014, the Court converted its Temporary Restraining Order to a Preliminary Injunction.  The Court further ordered Apotex to deliver to Mylan's Counsel of Record: (1) [a] list and supporting documentation for all AG Paxil CR® shipped by Apotex;" (2) "[a] list of entities and locations to which recall notices have been sent by Apotex;" and (3) "[w]eekly reports of Apotex's inventory of AG Paxil CR® returned to Apotex by its customers as a result of the recall."  See July 28, 2014, Order Converting Temporary Restraining Order to a Preliminary Injunction, at ¶¶ 1-4 (the "July 28 Order" or "Preliminary Injunction").

The Court's July 28 Order is based on Mylan's Proposed Order Converting Temporary Restraining Order To A Preliminary Injunction.  Notably, the Court expressly struck Mylan's

proposal that Apotex be required to produce a list of "any wholesalers, retailers, or pharmacy chains [to which Apotex shipped AG Paxil CR®] since the Court's injunction on July 16, 2014." See id. at ¶1.  The Court likewise struck Mylan's proposal that Apotex be required to produce "[a]ny communications or correspondences between Apotex and its customers regarding Apotex's Recall of AG Paxil CR®."  See id. at ¶3.

On August 14, 2014 (twelve days before Apotex is required to file a responsive pleading in this action), Mylan served and filed its Motion for Expedited Discovery.  Mylan seeks an order permitting it to engage in the following discovery: (1) serving a set of nine document requests and requiring responses within 14 days of service and production of responsive documents within 21 days of service; (2) taking a 30(b)(6) deposition of Apotex within 28 days of service; and (3) serving a subpoena on a non-party requiring production of documents on or before August 22, 2014 and a deposition on August 29, 2014.  See Plaintiffs' Motion For Expedited Discovery, at Exhibit A.

## APOTEX HAS COMPLIED WITH THE COURT'S ORDERS

Apotex has fully complied with this Court's July 22 and 28 Orders.   Apotex has refrained from "continuing to distribute, market, sell, or offer to sell AG Paxil CR® to anyone," "purchasing or offering to purchase AG Paxil CR® from GSK," or "otherwise interfering with Mylan's adjudicated rights.  See Affidavit of Jeff Hampton attached hereto, at ¶5.  In addition, Apotex has instituted a recall "any AG Paxil CR® product shipped to its downstream customers . . . since . . . July 16, 2014."  See id.  Finally, Apotex has produced to Mylan (1) the form recall notice Apotex sent to its customers, (2) a list of all AG Paxil CR® shipments made by Apotex during the timeframe subject to the July 28 Order, (3) copies of each recall notice that Apotex sent to each customer, which identify the customer, location, and order placed, and (4) three

separate weekly reports of AG Paxil CR® returned to Apotex by its customers as a result of Apotex's recall.[2]  See Declaration Of Wade G. Perrin In Support Of Mylan's Motion For Expedited Discovery, at Exhibit E (attaching the form recall notice Apotex sent to its customers, list of all AG Paxil CR® shipments made by Apotex during the timeframe subject to the July 28 Order, and copies of each recall notice that Apotex sent to each customer); see also Affidavit of Jeff Hampton attached hereto, at ¶6, Exhibit A (attaching the three separate weekly reports of AG Paxil CR® returned to Apotex by its customers as a result of Apotex's recall).

In its motion, Mylan offers no evidence to support any claim that Apotex is not in compliance with the order.[3]  In fact, with only one exception,[4] Mylan nowhere actually alleges any non-compliance.  Although Mylan contends that it does not have adequate information to gauge whether Apotex has complied with the injunction, it cannot dispute that it has personal knowledge of Apotex' compliance (or non-compliance) with the terms of the injunction

---

[2] At footnote 2 of its brief, Mylan states that, "[i]n violation of the Court's Order, Apotex did not provide the weekly update of returned product that it was required to produce on August 11, 2014." See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 4, n.2.  The Preliminary Injunction entered on July 28, 2014 and requires Apotex to provide "weekly reports of AG Paxil CR® returned to Apotex by its customers."  As of August 19, 2014, 22 days since entry of the Preliminary Injunction, Apotex has provided to Mylan three "weekly reports," the first on August 4, 2014, the second on August 14, 2014, and the latest on August 19, 2014.  See Affidavit of Jeff Hampton attached hereto, at ¶6, Exhibit A.  There is plainly no factual basis for Mylan's contention that Apotex is "[i]n violation of the Court's Order," which likely explains why Mylan buried this extraordinary accusation in a footnote to its brief.

[3] Mylan claims that it is in "the untenable position of having to prove Apotex' non-compliance with the Court's Order before Mylan is given access to documents that confirm (or de-confirm) Apotex's compliance."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 6.  There is no merit to this complaint.  A party is required by the Federal Rules of Civil Procedure to have a good faith and objectively reasonable basis for filing a motion or other paper in this Court.  See Fed. R. Civ. P. 11.  An adversary's factually unsupported suspicion is not a sufficient foundation for a complaint or for a request for an order to show cause, nor is it a sufficient foundation to permit pre-suit or pre-answer discovery.  Moreover, the complaint is wrong as a matter of fact.  Mylan has access to the very market participants who could provide evidence of non-compliance, i.e., the wholesalers, distributors, and pharmacies who buy and sell AG Paxil.  Thus, Mylan does not need discovery from Apotex to determine whether there is evidence of non-compliance with the Court's order.  Of course, Mylan has come forward with no such evidence.

[4] See note 1, supra.

requiring production of information to Mylan -- as to which, Mylan makes no credible allegation of non-compliance.[5]

## ARGUMENT

I.     **The Notaro Standard For Expedited Discovery Is The Standard That Mylan Must Meet, Not The Reasonableness Standard, And Mylan Fails Under Both**

A.  **Mylan Cites The Wrong Standard In Support of Its Claim That Expedited Discovery Is The Norm**

Expedited discovery is not the norm, it is warranted only in "emergency or unusual circumstances."  See Hunter v. S.E.C., CIV.A. 94-5340, 1994 WL 580096, *2 (E.D. Pa. Oct. 20, 1994); see also Fed. R. Civ. P. 26(d); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 623 (N.D. Ill. 2000).  Mylan, however, suggests that expedited discovery should be granted here as a matter of "routine" and that this Court's opinion in Better Packages, Inc. v. Zheng entitles a party to expedited discovery any time its request is "reasonable."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 5, 7 (citing Better Packages, Inc. v. Zheng, No. Civ. A. 05-4477 (SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006).

Mylan is wrong.  As this court recognized in the very case relied upon by Mylan, two different standards govern requests for expedited discovery.  See Better Packages, Inc., supra, 2006 WL 1373055, at *2.  "The first is the more formal analysis outlined in Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y.1982).  The Notaro standard is very similar to a preliminary injunction analysis and looks more closely at the merits of the requests."  Id.  Notaro is a "heightened" and "stringent" standard that is appropriate where the request is not in aid of a pending motion for a

---

[5] Mylan does complain that Apotex has refused to voluntarily produce information in response to its requests, but notably Mylan never suggests that the information requested was required to be produced under the Court's order.  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 2-3.

preliminary injunction or where a moving party's motives are questionable.  See id.  "The second is the reasonableness standard, which requires the party seeking the discovery to prove that the requests are reasonable under the circumstances."  Id. at *2.  The less stringent "reasonableness standard" is typically applied when the request for expedited discovery is made in connection with a pending motion for a preliminary injunction.  See Better Packages, Inc. v. Zheng, CIV.A. 05-4477 (SRC), 2006 WL 1373055, *4 (D.N.J. May 17, 2006).  In any event, under either standard, Mylan's motion should be denied.

### B.  The Heightened Notaro Standard Applies To Mylan's Expedited Discovery Request

The more stringent Notaro standard is appropriate to protect defendants from "extraordinary discovery requests at . . . an early stage of . . . litigation," particularly where, as here, (1) "[t]he instant application for expedited discovery is not in aid of an impending preliminary injunction hearing," but "[i]nstead . . . stands alone," and (2) the moving party's motive for seeking expedited discovery is "questionable," e.g., where the requested expedited discovery "has a substantive element, despite [its] ostensibly procedural character [such that like] a preliminary injunction, [the sought after] expedited discovery . . . may be seen as a form a equitable relief, pendente lite [thus making] a preliminary injunction-like analysis . . . appropriate."  Gucci Am., Inc. v. Daffy's, Inc., CIV.A. 00-4463, 2000 WL 1720738, *6 (D.N.J. Nov. 14, 2000); see also Better Packages, Inc., 2006 WL 1373055, at *2.  The Notaro standard should govern.  Mylan has already obtained a preliminary injunction in this case, and thus the request for expedited discovery is not in aid of preliminary relief.  Moreover, as will be shown below, there is reason to question Mylan's motives.

Mylan and Apotex are competitors, and Mylan's proposed discovery seeks highly confidential information about Apotex's customers, contract prices, and sales practices. In

Mylan's proposed Preliminary Injunction, it asked this Court to order Apotex to provide to "Mylan's Counsel of Record . . . [a]ny communications or correspondences between Apotex and its customers regarding Apotex's Recall of AG Paxil CR®."  This Court physically struck out this requested order in its entirety.  See July 28 Order.  Nonetheless, Mylan's motion for expedited discovery expressly seeks, e.g.:

- Any and all documents concerning any direct or indirect communications between You, including without limitation any National Customer Account Managers, and any Recall Customers relating to AG Paxil CR® on or after July 16, 2014, including without limitation any communications relating to the AG Paxil CR® Recall;[6]

- Any and all documents concerning any direct or indirect communications between any Recall Vendors and any Recall Customers relating to AG Paxil CR® on or after July 16, 2014, including without limitation any communications relating to the AG Paxil CR® Recall;[7] and

- Any and all documents concerning terms or provisions in contracts or agreements between You and any Recall Customers relating to any Recall of AG Paxil CR®.[8]

Mylan's expedited discovery motion thus plainly seeks to circumvent the express limitations that this Court placed on its July 28 Order, raising serious questions about Mylan's motives.

Finally, Mylan's bases for requesting expedited discovery are themselves suspiciously without merit.  According to Mylan, it "requires" expedited discovery at this stage in the

---

[6] Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at Exhibit F, Request 5; see also id. at 7 (seeking "any materials documenting any other communication regarding the recall between Apotex and its recall vendor on the one hand, and Apotex's customers on the other."); id. at Exhibit G, Topic 5 (seeking 30(b)(6) deposition testimony regarding "[d]irect and indirect communications between Apotex, including without limitation any National Customer Account Managers, and any Recall Customers relating to AG Paxil CR® on or after July 16, 2014, including without limitation any communications relating to the AG Paxil CR® Recall."); id. at Exhibit H, Request 3 (seeking "[a]ny and all documents concerning any direct or indirect communications between You and any Recall Customers relating to AG Paxil CR® on or after July 16, 2014, including without limitation any communications relating to the AG Paxil CR® Recall.").

[7] Id. at Exhibit F, Request 6.

[8] Id. at Exhibit F, Request 2.

8

litigation for two reasons: (1) "to assess the extent of the harm that Apotex's recent misconduct has caused," and (2) "to ensure that Apotex is conducting itself in a manner that prevents further harm to Mylan's adjudicated rights."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 5-6.  Neither of these reasons survives careful scrutiny. Mylan makes no effort to explain why it needs "to assess the extent of the harm that Apotex's recent misconduct has caused" at this point in the litigation as opposed to in the normal course of discovery.  Mylan has already obtained a preliminary injunction enjoining Apotex from distributing AG Paxil CR® and requiring Apotex to recall any shipments made after July 16, 2014.  By obtaining this injunction, Mylan rendered any discovery regarding "assess[ing] the extent of the harm that Apotex's recent misconduct has caused" relevant, if at all, only to a damages argument at trial.  Mylan cites no authority allowing expedited discovery after the moving party has already received a preliminary injunction, let alone authority allowing such relief where the preliminary injunction renders such discovery irrelevant to any preliminary relief the party might seek.

Awarding expedited discovery on the ground that Mylan needs "to ensure that Apotex is conducting itself in a manner that prevents further harm to Mylan's adjudicated rights" would likewise be extraordinary.  Here too, Mylan cites no authority allowing expedited discovery where a party seeks nothing more than to monitor its opponent's compliance with a preliminary injunction.  This should alert the Court that Mylan is not actually in need of discovery on an expedited basis, but is in fact seeking discovery for some other purpose not readily apparent on the face of Mylan's discovery requests, and thus weigh in favor of applying the Notaro standard to Mylan's expedited discovery requests rather than the reasonableness standard.

Further evidence of Mylan's motion for expedited discovery being "substantive [in nature], despite [an] ostensibly procedural character," is that much of the information Mylan seeks is completely unrelated to its purported goal of monitoring Apotex's compliance with this Court's Preliminary Injunction.  For instance, Mylan seeks:

- Documents sufficient to show any and all purchases of AG Paxil CR® from GSK since January 1, 2014, including price paid, credit terms, quantity of each dosage purchased and shipped, and date each shipment was received;[9]

- Documents sufficient to show any and all sales or offers to sell AG Paxil CR® since January 1, 2014, including price received, credit terms, quantity of each dosage sold and shipped or offered for sale, purchaser and location to which product was shipped, and date of shipment;[10] and

- Any and all documents, exhibits, attachments, appendices, or schedules referred to within or attached to the GSK-Apotex APS Agreement, including without limitation the "Section 1 Schedules" and "Disclosure Schedules" listed on page iii of the GSK-Apotex APS Agreement.[11]

This Court's July 28 Order enjoins Apotex from "continuing to distribute, market, sell, or offer to sell AG Paxil CR® to anyone," "purchasing or offering to purchase AG Paxil CR® from GSK," or "otherwise interfering with Mylan's adjudicated rights," beginning on July 22, 2014 - the date this Court entered the Temporary Restraining Order.  Similarly, Apotex is required "recall any AG Paxil CR® product shipped to its downstream customers," but only for shipments made "since the Court's injunction issued on July 16, 2014."  See July 22 Order.

---

[9] Id. at Exhibit F, Request 7; see also id. at Exhibit G, Topic 7 (seeking 30(b)(6) deposition testimony regarding "Apotex's Purchases of AG Paxil CR® from GSK since January 1, 2014, including price paid, credit terms, quantity of each dosage purchased and shipped, and date each shipment was received.").

[10] Id. at Exhibit F, Request 8; see also id. at Exhibit G, Topic 8 (seeking 30(b)(6) deposition testimony regarding "Apotex's sales or offers to sell AG Paxil CR® since January 1, 2014, including price received, credit terms, quantity of each dosage sold and shipped or offered for sale, purchaser and location to which product was shipped, and date of shipment.").

[11] Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at Exhibit F, Request 9; see also id. at 8 (seeking "certain documents that are explicitly referred to in the January 2014 GSK-Apotex APS Agreement.").

Even assuming that Mylan's monitoring of Apotex's compliance with this Court's July 28 Order is a legitimate basis for expedited discovery in the first place - it is not - exactly how discovery of information regarding "any and all sales or offers to sell AG Paxil CR®" predating the effective date of this Court's July 28 order by more than six months is necessary in order for Mylan to accomplish that pursuit is mystifying, especially considering the granularity of Mylan's requests, which go so far as to seek prices and credit terms of sales and purchases, including offers for sale that were never even realized as such.  Nor does Mylan offer any explanation as to how discovery of "certain documents that are explicitly referred to in the January 2014 GSK-Apotex APS Agreement" would be helpful to this purported effort.

Mylan's expedited discovery requests at this early stage of litigation are by all means extraordinary, are not in aid of a preliminary injunction hearing or any other expedited proceeding, and instead are motivated by Mylan's desire to circumvent the limits this Court placed on its July 28 order and thus allow Mylan to access Apotex's confidential customer lists and order histories for Mylan's own competitive advantage.  Notaro is thus the correct standard to apply to Mylan's expedited discovery requests, not reasonableness.

## II.   Mylan's Motion For Expedited Discovery Fails To Meet **Notaro's** Heightened Standard

### A.  The **Notaro** Standard

"Under the Notaro standard the moving party must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  Better Packages, Inc. v. Zheng, CIV.A. 05-4477 (SRC), 2006 WL 1373055, *2 (D.N.J. May 17, 2006) (internal quotation marks omitted) (quoting Notaro, 95

11

F.R.D. at 405).  "[S]uch stringent standards are appropriate to protect defendants at such an early stage of the litigation," particularly where the "expedited discovery . . . request ha[s] a substantive element to it."  See id. (quoting Notaro, 95 F.R.D. at 405) (citing Gucci America, Inc. v. Daffy's Inc., 2000 WL 1720738).  "[T]he factors are conjunctive; each must favor the grant of the injunction."  Gucci Am., Inc. v. Daffy's, Inc., CIV.A. 00-4463, 2000 WL 1720738, *7 (D.N.J. Nov. 14, 2000).  Additionally, courts must be "sensitive to the fact that [they are] applying the preliminary injunction standard outside of its native context and [should] adjust it as necessary to meet the situation at bar."  See id.

Mylan's motion for expedited discovery completely disregards the existence of Notaro's standard for expedited discovery motions, much less its application to Mylan's motion. Accordingly, Mylan fails to frame its argument for expedited discovery to account for each of Notaro's four elements, including articulating and establishing an irreparable injury and likelihood of success on the merits in support of its motion.  Even if Mylan were able to do so, however, Mylan's motion still fails because it cannot establish (1) any connection between the expedited discovery it seeks and the avoidance of the purported injuries alleged in its motion, and (2) any evidence that these purported injuries will result without expedited discovery in a way that somehow looms greater than the injury that Apotex will suffer if the expedited relief is granted.

### B.  Mylan's Motion For Expedited Discovery Fails Because It Cannot Establish Any Connection Between The Expedited Discovery It Seeks And The Avoidance Of Purported Injuries Alleged In Its Motion

The only "injuries" that Mylan points to in support of its motion for expedited discovery are its purported need "to assess the extent of the harm that Apotex's recent misconduct has caused," and (2) "to ensure that Apotex is conducting itself in a manner that prevents further

harm to Mylan's adjudicated rights."  Mylan fails, however, to demonstrate how receiving its sought-after expedited discovery will avoid these purported injuries.  As discussed above, this Court's Preliminary Injunction rendered any discovery regarding "assess[ing] the extent of the harm that Apotex's recent misconduct has caused" relevant, if at all, only to a damages analysis at trial.  This being the case, it is entirely unclear how discovery regarding this information would avoid injury to Mylan at this preliminary stage of litigation.  Mylan has the burden under Notaro to link its sought-after discovery to avoidance of an irreparable injury and the motion does not even attempt to do so.  Likewise, Mylan additionally seeks "certain documents that are explicitly referred to in the January 2014 GSK-Apotex APS Agreement," but offers no explanation as to how discovery of this information now as opposed to during the normal course of litigation will somehow protect it from irreparable harm.  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 8.

More importantly, Mylan entirely omits any explanation as to how the injunctive relief it already received from this Court fails to protect Mylan.  Mylan claims that "to ensure that Apotex is conducting itself in a manner that prevents further harm to Mylan's adjudicated rights," it "need[s] this discovery [due to] Apotex's continued evasion of Mylan's reasonable requests for information regarding Apotex's recall efforts and Apotex's own contradictory and unsubstantiated statements regarding its inability to enforce the recall."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 5-6.  Similarly, that "[f]or several weeks, Mylan has made reasonable requests of Apotex to provide documentation of its compliance with the Court's Order but Apotex has continuously evaded Mylan's requests." See id. at 6.  In this regard Mylan seeks information relating to: (1) "the AG Paxil CR® recall through requests that are limited either to the instant recall of a single product, or to certain

contractual terms and operating procedures that govern Apotex's recall processes or obligations"; and (2) "Apotex's purchases and sales of AG Paxil CR® during the months leading up to the trial in the Prior Contract Litigation through this Court's Order to Apotex to cease all sales of AG Paxil CR®."  See id. at 8.

In the first instance, Apotex is not "evading" anything.  It is protecting its confidential and proprietary information, including trade secret protected information such as customer lists - information that Apotex has every reason to protect from one of its competitors.  Second, doing so is fully in keeping with this Court's Preliminary Injunction, which expressly struck out Mylan's sought-after order that Apotex disclose a list of "any wholesalers, retailers, or pharmacy chains [to which Apotex shipped AG Paxil CR®] since the Court's injunction on July 16, 2014." See July 28, 2014, Order Converting Temporary Restraining Order to a Preliminary Injunction, at ¶1.

In this regard Mylan's assertion that it needs access to "materials documenting any other communication regarding the recall between Apotex and its recall vendor on the one hand, and Apotex's customers on the other" in order to "ensure that Apotex is conducting itself in a manner that prevents further harm to Mylan's adjudicated rights" is patently baseless.  As discussed above, this Court's July 28 Order expressly struck out Mylan's sought-after order that Apotex disclose "[a]ny communications or correspondences between Apotex and its customers regarding Apotex's recall of AG Paxil CR®."  Yet Mylan is now claiming that in order for it to monitor Apotex's compliance with this Court's July 28 order - a bizarre proposition in its own right and one for which Mylan points to no precedent in support - Mylan somehow needs expedited access to information that this Court expressly denied Mylan access to in its Preliminary Injunction Order.

Mylan is wholly unable to establish any connection between the expedited discovery it seeks and the avoidance of the purported injuries alleged in its motion, and expedited discovery should be denied on this ground alone.

### C. Mylan's Motion For Expedited Discovery Fails Because It Cannot Establish That Mylan's Purported Injuries Will Result Without Expedited Discovery In A Way That Somehow Looms Greater Than The Injury That Apotex Will Suffer If The Expedited Relief Is Granted

Mylan asserts that its above discussed discovery requests "are narrowly tailored to determine Apotex's level of compliance with this Court's Orders" and that "[e]xpedited discovery places no significant burden on Apotex, and any prejudice Apotex might face is outweighed by the necessity of the information to confirm (or de-confirm) Apotex's compliance with the Court's orders."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 8.

Mylan, however, (1) has no grounds to assert that Apotex is not fully complying with this Court's July 28 Order, and (2) failed to demonstrate how the information that Apotex has disclosed as part of its full compliance with this Court's Order, namely Apotex's production of its form recall notice, list of all shipments of AG Paxil CR®, copies of each of the recall notices to each customer -- which identify the customer, location and the orders themselves -- and weekly reports of AG Paxil CR® returned to Apotex by its customers as a result of the recall, falls short of providing Mylan with enough information to "confirm (or de-confirm) Apotex's compliance with the Court's orders."  Conversely, the additional expedited discovery that Mylan seeks, which includes information that this Court expressly denied Mylan access to and countless other requests for competitive information, would invade Apotex's confidential and proprietary information, including trade secret protected information such as customer lists.  Once this information is turned over to Mylan it cannot be recalled.  See Gucci Am., Inc. v. Daffy's, Inc.,

CIV.A. 00-4463, 2000 WL 1720738, *10 (D.N.J. Nov. 14, 2000) ("The identity of [the non-moving party's] supplier, once turned over to [the moving party], cannot be recalled.  It will not matter then if [non-moving party] prevails [at trial].").

This "potential for unfair harm" to Apotex weighs firmly in favor of denying Mylan's sought-after expedited discovery, particularly where Mylan has not even made an equivocal showing as to how its sought-after expedited discovery will avoid the purportedly irreparable injuries Mylan alleges in its motion.  See id.

### III. The Reasonableness Standard Takes Account Of Each Of The Above Factors And Thus Mylan's Motion For Expedited Discovery Fails Under The Reasonableness Standard As Well

#### A. There Is No Merit To Mylan's Claim That Expedited Discovery Is "Reasonable" Under The Facts And Circumstances Of This Case

Even if Mylan's request for expedited discovery qualified for the reasonableness standard, which it does not, its request would still fail as unreasonable under the circumstances of this case for many of the same reasons explained above in the discussion of the Notaro standard.  Under the reasonableness standard, if expedited discovery requests are "narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted," whereas "[if] the requests are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied."  See Better Packages, Inc., 2006 WL 1373055, *3 (quotations omitted).  "[C]ourt[s] should [thus] examine the appropriateness of a request for expedited discovery by weighing the need for the discovery at that point in the litigation with the breadth of the discovery requests."  See id.

Thus, even under the reasonableness standard Mylan still needs to show why it needs access to the information it seeks on an expedited basis as opposed to in the normal course of litigation.  Accordingly, this Court has noted that "expedited discovery is particularly appropriate

when a plaintiff seeks injunctive relief because of the expedited nature of injunctive

proceedings." See id. (internal quotation marks omitted). But here Mylan is not seeking

injunctive relief - it already received injunctive relief and is now asking for discovery that, as

explained above, circumvents the express limits this Court placed on the injunctive relief it

awarded Mylan in its July 28 Order.

Moreover, as with the Notaro standard, Mylan wholly fails to explain why it needs the

additional discovery it seeks in order to (1) "assess the extent of the harm that Apotex's recent

misconduct has caused," and (2) "ensure that Apotex is conducting itself in a manner that

prevents further harm to Mylan's adjudicated rights."[12]  To the extent these objectives are even

appropriate for expedited discovery in the first place, which Apotex disputes, Mylan most

---

[12] The heart of Mylan's "facts and circumstances" argument is its repeated -- and unsubstantiated -- claim that Apotex "flagrantly disregarded this Court's adjudication that Mylan has the exclusive right to sell generic Paroxetine CR" and that Apotex' allegedly "refus[ed] to demonstrate its complete compliance with the Court's recall order."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 5.  There is no merit to either claim.  Apotex has not "flagrantly disregarded" any "adjudication."  The jury returned a verdict in favor of Mylan it its action against GSK.  The jury was not asked to return a special verdict, and there is no basis for Mylan to claim that the jury determined that "Mylan has the exclusive right to sell generic Paroxetine CR."  Indeed, the suggestion that the owner of an NDA (here GSK) and the owner of an ANDA (here Mylan) for a particular product (here paroxetine CR) can enter an agreement granting the ANDA holder "the exclusive right to sell generic Paroxetine CR" is surprising, to say the least.  See F.T.C. v. Actavis, et al., 133 S.Ct. 2223, 2234-37 (2013).  Nor, moreover, is there any basis for Mylan to claim that Apotex disregarded the Court's order enjoining GSK from supplying Paroxetine to Apotex, and Mylan has submitted no evidence to support any such claim.  As for Mylan's claim that Apotex has refused to demonstrate compliance with the Court recall order, Mylan's claim in essence is that Apotex has refused to satisfy Mylan that Apotex has complied.  Apotex has provided all of the information required by the Court and has repeatedly affirmed that it has complied with the Court's order.  In the absence of any evidence to the contrary, Apotex' affirmations are sufficient, as the Court itself suggested when it refused to order Apotex to provide Mylan with the very information it seeks to obtain through its proposed expedited discovery.  Finally, Mylan suggests that Apotex has made "contradictory" statements "regarding its inability to enforce the recall," claiming that Apotex' truthful communication that it cannot force its customers to comply with the request to return product is somehow tainted by Apotex' good faith effort to comply with the order by establishing procedures and retaining a vendor to effect the product recalls.  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 5-6 and n.3.  No comment is necessary to demonstrate the absurdity of Mylan's suggestion that Apotex should be sanctioned for engaging in good faith efforts to effect a recall despite its concern that customers cannot be compelled to return the product subject to the recall.

particularly fails to explain why the information Apotex has already produced and continues to produce to Mylan - in full compliance with this Court's July 28 Order - is insufficient to achieve either of these objectives.  As explained above, this information plainly is sufficient, and Mylan's failure to explain otherwise renders the expedited discovery it seeks patently overbroad and unreasonable.  This is particularly so where, as here, and also as explained above, Mylan's requests would invade Apotex's confidential and proprietary information, which once turned over to Mylan cannot be recalled.  See Gucci Am., Inc. v. Daffy's, Inc., CIV.A. 00-4463, 2000 WL 1720738, *10 (D.N.J. Nov. 14, 2000).  Mylan's expedited discovery request should thus be denied under the reasonableness standard just as it should be under the Notaro standard.

### B.  Expedited Discovery Is Burdensome And The Proposed Requests Are Not Narrowly Tailored To Any Need For Expedited Relief

Mylan claims that its requests "for expedited discovery" are neither burdensome nor overly broad.  Mylan is wrong on both counts.  Mylan's argument turns on an analysis of the individual discovery requests in the context of its claims generally.[13]  Mylan's argument misses the mark because it fails to address whether it is unduly burdensome and overly broad to seek this information through the vehicle of *expedited discovery*.  Viewed from this perspective, there is no question that the requests are both overly broad and unduly burdensome.

As was shown above, the proposed discovery requests, and the request for expedited discovery generally, are not narrowly tailored to the purported necessity for the expedited discovery: i.e., to measure Apotex's compliance with the Preliminary Injunction and/or to

---

[13] Mylan's motion seeks the right to engage in expedited discovery and attaches specific discovery requests as an exhibit.  This opposition addresses only Mylan's request for expedited discovery generally.  The specific requests have not yet been served on Apotex, and Apotex reserves the right to object to the individual discovery requests in the ordinary course on all appropriate grounds, including that a specific request may be overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, or that a particular request may seek information that is not relevant to any issue in the case or may seek discovery of information that is protected from disclosure under the attorney-client privilege and/or the attorney work product doctrine.

prevent further irreparable harm.  Indeed, the requests seek information from as early as January of 2014, more than six months before the entry of the preliminary injunction, and such information cannot possibly be relevant to the issue of Apotex's compliance with that order.  The requests also seek information about Apotex's prices and customers -- confidential information that has no bearing on the identified issues allegedly warranting expedited discovery.  Finally, the requests seek access to a confidential agreement between GSK and Apotex, notwithstanding that although that agreement may be relevant to the claims and defenses generally, it has no relationship whatsoever to the issues Mylan itself claims warrant expedited discovery.[14]  The requests are overly broad.

The suggestion that the requests are not unduly burdensome is baffling.  Apotex has not yet answered the Complaint or filed any type of responsive pleading.  Mylan seeks to engage in third party discovery in the very week that Apotex' answer is due.  Within a month, Mylan proposes to take a 30(b)(6) deposition of Apotex and to require Apotex to produce documents responsive to its requests.  All before Apotex has had time to evaluate the Complaint and formulate its defenses.  As this Court has itself acknowledged, this is precisely the type of burden that the Rules are designed to protect against:

> A large part of the reasoning behind the court's heightened standard for expedited discovery in Notaro and the reason for the court's application of Notaro to Gucci was that the nonmoving party in both cases needed protection from the plaintiff's extraordinary discovery requests at such an early stage of the litigation.  The protection of the court provided defendants with the time necessary to investigate the facts and circumstances surrounding the litigation without fear of

---

[14] Mylan justifies its requests on the grounds that "Apotex will have to produce these documents eventually, since these requests are clearly relevant to Mylan's claims against Apotex, and are therefore discoverable under Fed. R. Civ. P. 26."  See Plaintiffs' Memorandum of Law in Support of their Motion for Expedited Discovery, at 9.  Without regard to the correctness of Mylan's claim, that Mylan rests its request for expedited discovery on its claim that "Apotex will have to produce these documents eventually" demonstrates unequivocally that Mylan's requests are hardly narrowly tailored to the issues it claims warrant expedited discovery.

incriminating themselves by turning over discovery at such an early stage of litigation.

See Better Packages, Inc. v. Zheng, CIV.A. 05-4477 (SRC), 2006 WL 1373055, *4 (D.N.J. May 17, 2006) (citations omitted) (emphasis added).  The request for expedited discovery is unnecessary and overly broad.  It should be denied.

## CONCLUSION

For the foregoing reasons, Apotex respectfully requests that the Court deny Mylan's Motion for Expedited Discovery.

Respectfully submitted,
HILL WALLACK LLP

By:____/s/ Eric I. Abraham_____
Eric I. Abraham
Christina Saveriano
202 Carnegie Center
Princeton, New Jersey 08543
(609) 924-0808
eabraham@hillwallack.com

James Matthews *(pro hac pending)*
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3197
Facsimile: (617) 261-3175

Attorneys for Apotex Inc. and
Apotex Corporation

Dated:  August 21, 2014

**[INSERT CERTIFICATION, IF REQUIRED]**