HIGHLY CONFIDENTIAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MYLAN INC. and**<br>**MYLAN PHARMACEUTICALS INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**APOTEX INC.,**<br>**APOTEX CORPORATION, SMITHKLINE**<br>**BEECHAM CORPORATION d/b/a**<br>**GLAXOSMITHKLINE,**<br>**SMITHKLINE BEECHAM P.L.C., and**<br>**SMITHKLINE BEECHAM (CORK)**<br>**LIMITED.**<br><br>**Defendants.** | **Civil Action No. 14-4560 (JAP)(LHG)**<br><br>**FILED UNDER SEAL** |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Mylan Inc., formerly known as Mylan Laboratories, Inc., and Mylan Pharmaceuticals Inc. (collectively, "Mylan"), for their complaint against SmithKline Beecham Corporation, doing business as GlaxoSmithKline, SmithKline Beecham P.L.C., SmithKline Beecham (Cork) Limited (collectively, "GSK") and Apotex, Inc. and Apotex Corporation (collectively, "Apotex"), hereby allege as follows:

### I.     NATURE OF THE ACTION

1.     By this action, Mylan seeks to halt GSK's breach of the Mylan/GSK Agreement and Apotex's unlawful interference with Mylan's adjudicated status as the holder of exclusive rights to market and sell generic paroxetine hydrochloride extended-release tablets.

2.     Months after the Third Circuit remanded Mylan's breach of contract claim to this Court for trial, and with full knowledge of Mylan's rights under the Mylan/GSK

HIGHLY CONFIDENTIAL

Agreement, ████████████████████████████████████████████

████████████████████████████████████, thus flouting certain of Mylan's

rights in the Agreement.

3.      By Apotex's own admission ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

4.      These rights were transferred to Apotex, without Mylan's consent and in

violation of the Mylan/GSK Agreement.  Indeed, the Mylan/GSK Agreement, of which

both Apotex and GSK had actual knowledge, explicitly prohibits the transfer of any right

under that agreement without Mylan's express written consent.

5.      And GSK and Apotex's disregard for Mylan's contractual rights continued

even after Mylan's rights were confirmed by a jury and judgment of this Court.  At a trial

in this Court in a related case in March 2014, a jury determined that GlaxoSmithKline

("GSK") had breached Mylan's exclusive license rights by supplying Apotex with

branded Paxil CR® to be sold as an authorized generic in competition with Mylan's

generic paroxetine product.  Even after learning of the verdict, GSK continued to supply

Apotex, upon information and belief, at Apotex's demand, with Paxil CR®, in clear

contravention of the jury's verdict.  Mylan was thus forced to return to this Court to seek

a permanent injunction, to bring a halt to GSK's and Apotex's continued violations of

Mylan's adjudicated rights.  On July 16, 2014, the Court granted Mylan's motion,

ordering GSK immediately to cease deliveries of product for resale by Apotex.

HIGHLY CONFIDENTIAL

6.      Even with a Court order directing a halt to GSK and Apotex's unlawful supply arrangement, Apotex thumbed its nose at the rule of law.   Although Mylan immediately brought the Court's July 16, 2014 Order to Apotex's attention, and asked that it stop selling AG Paxil CR® to give effect to the Court's order, Apotex continued to sell the now-enjoined product, and indeed depleted its existing inventory in a matter of a few days, in a desperate, last-ditch effort to squeeze every last penny of profit it could from product unlawfully secured from GSK.

7.      By flooding the market with product it should never have obtained in the first place, Apotex tried to effect an end-run around the jury's verdict and the Court's injunction order.   The clear import of the order is that Mylan should immediately be restored to its position as the exclusive holder of rights to market and sell generic paroxetine products.   Apotex's actions fly in the face of that order.

8.      Mylan is suffering immediate and irreparable harm as a result of Apotex's and GSK's actions.   Pursuant to its license agreement with GSK, Mylan enjoys exclusive rights to market and sell generic paroxetine hydrochloride products, and a jury has conclusively determined that GSK's supply of authorized generic Paxil CR® for resale by Apotex violates those rights.   Apotex's and GSK's unjustifiable refusal to give effect to the jury's verdict by i████████████████████████████████████████ ████████████████████████████████████████t, GSK failing immediately to cease supplying Apotex in the wake of the jury's verdict, and Apotex refusing to cease sale of authorized generic Paxil CR® has caused Mylan to lose customers, profits and market share.   Now, by dumping large volumes of GSK-supplied product at reduced prices, Apotex is causing Mylan irreparable harm, jeopardizing Mylan's customer

goodwill and unreasonably eroding market prices to levels at which Mylan's prices and profit margins will be negatively and irretrievably impacted.

9.     GSK's purported transfer of rights to Apotex breaches explicit provisions in the Mylan/GSK Agreement that are clear on their face and that have been adjudicated by a jury in this Court.  Additionally, Apotex has willfully, maliciously and without justification induced GSK to breach the Mylan/GSK Agreement.  Judgment for Mylan should be entered to ensure, once and for all, that GSK and Apotex honor the rule of law.

## II.     THE PARTIES

10.     Plaintiff Mylan Inc. is a corporation organized under the laws of Pennsylvania, having a place of business at 1000 Mylan Boulevard, Canonsburg, Pennsylvania 15317.

11.     Plaintiff Mylan Pharmaceuticals Inc. is a corporation organized under the laws of West Virginia, having a place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26504.

12.     Upon information and belief, Defendant Apotex Inc. is a corporation organized and existing under the laws of Canada and has its principal place of business at 150 Signet Drive, Ontario, Canada, M9L IT9.

13.     Upon information and belief, Defendant Apotex Corporation is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.

14.     Upon information and belief, Apotex Inc. and Apotex Corporation are registered to do business in New Jersey.

HIGHLY CONFIDENTIAL

15.     On information and belief, Apotex Inc. and Apotex Corporation are in the business of, among other things, marketing and distributing pharmaceutical products in the State of New Jersey and throughout the United States, including the very product at issue in this case.

16.     Furthermore Apotex Corp. is registered with the New Jersey Department of Health and Senior Services to sell generic pharmaceutical products in New Jersey (Wholesale License No. 5003192).

17.     Defendant GlaxoSmithKline LLC (formerly known as SmithKline Beecham Corporation), doing business as GlaxoSmithKline, is a limited liability company organized under Delaware law, whose sole member GlaxoSmithKline Holdings (Americas) Inc. is a corporation organized under the laws of Delaware having its principal place of business in Wilmington, Delaware.

18.     Upon information and belief, Defendant SmithKline Beecham P.L.C. is a public limited company organized under the laws of England and Wales with its principal place of business at 980 Great West Road, Brentford, Middlesex, TW89GS, England.

19.     Defendant SmithKline Beecham (Cork) Limited, successor to SB Pharmco Puerto Rico Inc., is a private limited company organized under the laws of Ireland, having a principal at Currabinny, Carrigaline, County Cork, Ireland.

20.     Upon information and belief, the GSK Defendants are registered to do business in New Jersey, and have a place of business in New Jersey.

21.     On information and belief, the GSK Defendants are in the business of, among other things, marketing and distributing pharmaceutical products in the State of New Jersey and throughout the United States.

HIGHLY CONFIDENTIAL

### III.   JURISDICTION AND VENUE

22.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and is between a citizen of a state, on the one hand, and a citizen of another state and a citizen of a foreign state, on the other.

23.   This Court has personal jurisdiction over GSK because GSK is registered to do business in New Jersey.  In addition, GSK sells products and does business throughout the United States, including within this judicial district.  Furthermore, the Agreement between Mylan and GSK designates the United States District Court for the District of New Jersey as the location for resolving disputes regarding the Agreement and provides that "All Parties consent to the personal jurisdiction of the District Court for the District of New Jersey for purposes of enforcing this Agreement."

24.   In addition, the Court has personal jurisdiction over GSK by virtue of its contacts with the State of New Jersey.  For example:

- On information and belief, GSK is in the business of manufacturing, marketing, importing, preparing and selling pharmaceuticals which it distributes in the State of New Jersey and throughout the United States.

- GSK is registered with the New Jersey Department of Health and Senior Services to sell pharmaceutical products in New Jersey (Wholesale License No. 5003772).

25.   This Court has personal jurisdiction over Apotex because, *inter alia*, it has committed (i) tortious interference, (ii) interference with contractual relations, (iii) interference with prospective economic benefit, and (iv) inducement of breach of contract, in the State of New Jersey, all to the detriment and harm of Mylan.  Moreover, the agreement with which Apotex is interfering is governed by New Jersey law.

HIGHLY CONFIDENTIAL

26.     In addition, the Court has personal jurisdiction over Apotex by virtue of its contacts with the State of New Jersey.  For example:

- On information and belief, Apotex is in the business of manufacturing, marketing, importing, preparing and selling generic pharmaceuticals (including Paroxetine CR) which it distributes in the State of New Jersey and throughout the United States.

- Apotex Corp. is registered with the New Jersey Department of Health and Senior Services to sell generic pharmaceutical products in New Jersey (Wholesale License No. 5003192).

- Apotex markets and distributes Paroxetine CR in New Jersey, and its Paroxetine CR product is prescribed by practicing physicians and dispensed by pharmacies located within New Jersey, all of which have a substantial effect on New Jersey.

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## BACKGROUND

### IV.     THE AGREEMENT BETWEEN MYLAN AND GSK

28.     GSK originally marketed and sold Paxil CR®, the brand name for paroxetine hydrochloride extended-release oral tablets, in strengths of 12.5 mg, 25 mg and 37.5 mg, approved by FDA for the treatment of major depressive disorder.

29.     On June 25, 2007, GSK sued Mylan for alleged infringement of the '640 patent based on Mylan's filing of an Abbreviated New Drug Application ("ANDA") directed to a generic version of Paxil CR®.  That lawsuit, Civil Action No. 07-2939 (the "'640 Patent Action"), was filed in this Court.

30.     The Patent License and Settlement Agreement, as amended (the "Mylan/GSK Agreement") at issue in this case, which was executed on August 10, 2007, resulted from the settlement of the '640 Patent Action.

HIGHLY CONFIDENTIAL

31.     Section II(c) of the Mylan/GSK Agreement provided that the patent licenses set forth therein (providing Mylan a license under the '640 patent to "make, have made, sell, have sold and import Mylan Generic Paroxetine Products") "shall be exclusive (even to GSK) in favor of Mylan for all Generic Paroxetine Products." Section VI of the Mylan/GSK Agreement also makes clear that Mylan pays GSK a royalty as consideration for the license rights granted to Mylan in Section II(c).

32.     The Mylan/GSK Agreement provides in Section XII(d) that "This Agreement and the rights here in shall not be assigned or otherwise transferred by either Party without the prior written consent of all Parties."

33.     On September 14, 2007, GSK and Mylan entered into a First Amendment to the Mylan/GSK Agreement (the "First Amendment").

34.     On September 27, 2007, GSK and Mylan entered into a Second Amendment to the Mylan/GSK Agreement (the "Second Amendment"), which slightly modified Mylan's exclusivity rights under the Mylan/GSK Agreement.  Pursuant to the Second Amendment at Section 2, Mylan retained exclusivity rights to the patent licenses, subject to two limited exceptions:

    a.    "If GSK receives a Third Party Notification and GSK initiates an action for patent infringement, GSK can enter into a settlement agreement with respect to such action at any time and Mylan agrees to waive its exclusivity under Section II(c) in order to permit GSK under such settlement agreement to grant such Third Party a non-exclusive license under the GSK Patents to sell Generic Paroxetine Product(s) in the dosage form(s) specified in the Third Party's ANDA, on which the Third Party Notification is based, effective as of 180 days after the date on which Mylan launches Generic Paroxetine Products for sale in the Territory.

    b.    Also, GSK or its Affiliate may commence marketing and selling generic paroxetine hydrochloride controlled or modified release products pursuant to its Paxil ® CR NDA ("Authorized Generic Products") at the end of the second year after Mylan launches its Generic Paroxetine Products."

HIGHLY CONFIDENTIAL

35.     Under the Second Amendment to the Mylan/GSK Agreement, Mylan's license remains exclusive unless and until either of the exceptions provided in the Second Amendment occurs.

## V.     MYLAN'S SALE OF GENERIC PAROXETINE HYDROCHLORIDE EXTENDED-RELEASE PRODUCTS

36.     In accordance with the Mylan/GSK Agreement, Mylan launched generic paroxetine hydrochloride extended-release tablets in mid-May 2008.

37.     Since May 2008, the generic paroxetine hydrochloride extended-release tablets product has been an important component of Mylan's portfolio of drug products, and one of Mylan's most successful products in the United States.

38.     Since May 2008, Mylan's generic paroxetine hydrochloride extended-release tablets have generated hundreds of millions of dollars in sales in the United States.

39.     Since May 2008, Mylan has been the *only* company lawfully offering generic paroxetine hydrochloride extended-release oral tablets to the public because it is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets.

40.     In September 2010, Mylan learned from a customer that Apotex was entering the market with an authorized generic version of Paxil CR®.

41.     Because allowing Apotex to market and sell an authorized generic version of Paxil CR® violated the Mylan/GSK Agreement, Mylan immediately contacted GSK and asked it to cease its supply to Apotex.  GSK refused, stating that it had entered in to an agreement with Apotex to settle claims Apotex had asserted against GSK for GSK's misuse of patents.

HIGHLY CONFIDENTIAL

42.    Mylan promptly sued GSK in this Court on September 20, 2010 alleging breach of contract.  Simultaneously, Mylan sued Apotex for tortious interference with the Mylan/GSK Agreement, and inducement to breach the Mylan/GSK Agreement.  This lawsuit, captioned *Mylan Inc. et al. v. SmithKline Beecham Corp et al.*, Case No. 10-4809 (JAP) (LHG), will hereinafter be called the "Prior Contract Litigation."

43.    Because Apotex claimed that it had no knowledge of the specific provisions of the Mylan/GSK Agreement at the time it settled its claims against GSK, this Court entered summary judgment in Apotex's favor in the Prior Contract Litigation. It also entered summary judgment in GSK's favor.

44.    In a decision issued on July 22, 2013, the U.S. Court of Appeals for the Third Circuit affirmed summary judgment as to Apotex but reversed (in part) as to GSK, holding that Mylan's breach of contract claim should be tried to a jury in this Court.

**VI.    GSK'S SECOND BREACH OF THE MYLAN/GSK AGREEMENT, APOTEX'S INDUCEMENT THEREOF AND TORTIOUS INTERFERENCE THEREWITH**

45.    Months after the Third Circuit remanded to trial the issue of whether GSK breached the Mylan/GSK Agreement through its settlement with Apotex, putting GSK and Apotex on notice of Mylan's rights under the Mylan/GSK Agreement, ██████

███████████████████████████████████████████████████

████████████████████████.

46.    ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

HIGHLY CONFIDENTIAL

███████████████████████████████████████████

██████████████████████████████████████

47.    ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████.

48.    ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

49.    T█████████████████████████████████████

████████████████████████████████e████████GSK previously

gave Mylan the exclusive right to make and sell generic paroxetine hydrochloride

extended-release tablets.

50.    ████████████████████████████████████

███████████████████████████████

51.    ████████████████████████████████████

███████despite knowing of the Mylan/GSK Agreement, which contains an explicit

prohibition on the transfer of either Mylan or GSK's rights under the agreement without

the express written consent of both Mylan and GSK.

52.    As a party to the GSK/Mylan Agreement, GSK indisputably knew its

terms.

11

HIGHLY CONFIDENTIAL

53.  ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

54.    Moreover, the parties were well aware that their infringement of Mylan's

rights would likely lead to this very litigation.  ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

55.    Apotex and GSK thus had actual knowledge of the Mylan/GSK

Agreement between GSK and Mylan and the amendments thereto, including actual

knowledge of the language in Section 2 of the Second Amendment, anticipated that as a

result of the APA Mylan would file suit for breach of the Mylan/GSK Agreement, ████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████

HIGHLY CONFIDENTIAL

**VII.   THE JURY VERDICT CONFIRMS THAT GSK'S SALES OF AUTHORIZED GENERIC PAROXETINE CR TO APOTEX BREACHED THE MYLAN/GSK AGREEMENT**

56.     Mylan tried its breach of contract claim against GSK in the Prior Contract Litigation to a jury in March 2014.  On March 25, 2014, the jury found that, by supplying Apotex with the authorized generic of Paxil CR® for sale to downstream customers, GSK had breached the Mylan/GSK Agreement.  The jury awarded Mylan damages in the amount of $106,700,000.

57.     After the jury's verdict, Mylan contacted GSK to seek confirmation that it would cease supplying Apotex with the authorized generic of Paxil CR® in light of the determination that such conduct breached the Mylan/GSK Agreement.  GSK explicitly refused to confirm that it would no longer supply Apotex with the authorized generic of Paxil CR®, notwithstanding the jury's verdict.  Mylan therefore moved the Court to enter a permanent injunction.

58.     On July 16, 2014, this Court issued an Order permanently enjoining GSK from continuing to supply Apotex with the authorized generic of Paxil CR® for the life of the '640 patent.  In an Opinion issued on that same date, the Court held that Mylan had demonstrated that "it has suffered irreparable injury and that monetary damages are inadequate to compensate it for such injury."

**VIII.   APOTEX TORTIOUSLY AND UNLAWFULLY INTERFERES WITH THE MYLAN/GSK AGREEMENT AND MYLAN'S PROSPECTIVE ECONOMIC ADVANTAGE AND INDUCES GSK TO CONTINUE TO BREACH THE MYLAN/GSK AGREEMENT**

59.     At least by virtue of its involvement in the Prior Contract Litigation, Apotex had actual knowledge of the Mylan/GSK Agreement between Mylan and GSK, including actual knowledge of the Second Amendment thereto.  Beginning no later than

HIGHLY CONFIDENTIAL

the date on which the Prior Contract Litigation was commenced, on September 20, 2010 Apotex was aware of Mylan's exclusive license rights under the Mylan/GSK Agreement.[1]

60.    Apotex also had knowledge that GSK's supply of the authorized generic of Paxil CR® to Apotex, for Apotex to market and sell in competition with Mylan, satisfied neither of the two narrow exceptions to exclusivity, as described above.

61.    Despite Apotex's knowledge at least as early as September 20, 2010,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████

62.    Apotex's post-verdict conduct all but confirms that it has no intention of respecting Mylan's rights under the Mylan/GSK Agreement.

63.    Representatives of Apotex attended the March 2014 trial in the Prior Contract Litigation, including the announcement of the jury's verdict, which confirmed that GSK's supply of the authorized generic of Paxil CR® to Apotex breached the Mylan/GSK Agreement.

64.    Notwithstanding its direct knowledge of the trial proceedings, Apotex, again insisted that GSK continue to supply Apotex with the authorized generic of Paxil

---

[1] Upon information and belief, Apotex had knowledge of the Agreement even before the Prior Contract Litigation was filed because, as came out at trial in the Prior Litigation, the terms of the settlement between Apotex and GSK required GSK to funnel to Apotex royalties paid by Mylan to GSK under the Agreement.

HIGHLY CONFIDENTIAL

CR®, even after the jury returned a verdict confirming that such supply was unlawful. GSK obliged Apotex, supplying product in direct contravention of the jury's verdict.

65.     Apotex's unlawful demand that GSK continue to supply it with the authorized generic of Paxil CR® and GSK's acquiescence in the face of the jury verdict constitutes a malicious, willful and wanton disregard for the legal process, Mylan/GSK Agreement and Mylan's lawful rights thereunder, without just cause or excuse.

66.     Apotex, through its counsel, was also notified of the Court's permanent injunction on the day that it issued.  In its letter notifying Apotex's counsel of the Court's Order, Mylan requested that, in light of the injunction, Apotex immediately cease selling the authorized generic of Paxil CR® unlawfully supplied by GSK.  Apotex expressly refused, via letter dated July 17, 2014, to comply with Mylan's request.

67.     Even worse, it appears that, after learning of the permanent injunction, Apotex undertook a campaign to dump its accumulated inventory of authorized generic Paxil CR®.  Within a few days following the entry of the permanent injunction Order, Apotex shipped out its entire inventory of authorized generic Paxil CR®.  Apotex's malicious actions appear to have been designed to garner as much profit as it could from product unlawfully supplied by GSK, before any action could be taken to stop it.

68.     As described above, despite knowing of the Mylan/GSK Agreement, and Mylan's adjudicated rights thereunder, Apotex induced GSK to violate the Mylan/GSK Agreement, by requiring GSK to enter into the APA and requiring GSK to continue its supply to Apotex post-verdict.  These actions interfered with Mylan's exclusivity for generic paroxetine hydrochloride extended-release tablets.

HIGHLY CONFIDENTIAL

69.     Upon information and belief, Apotex undertook these actions maliciously, with the knowledge that it was causing GSK to engage in unlawful conduct that would harm Mylan without any just cause or excuse.

70.     Apotex's and GSK's actions have caused Mylan to suffer damages by the improper loss of its exclusivity in the generic market, including irretrievable loss of market share and customers, and through erosion in prices of the generic paroxetine hydrochloride extended-release tablets.   Mylan has been adjudicated the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and Apotex's and GSK's unlawful actions have caused and are causing Mylan to suffer injury that is not compensable in monetary terms.

## CLAIMS

### IX.     FIRST CAUSE OF ACTION: BREACH OF CONTRACT AS AGAINST GSK

71.     Plaintiffs repeat and reiterate the allegations contained within Paragraphs 1 through 70 above as if set forth fully herein.

72.     Mylan and GSK entered into the valid Mylan/GSK Agreement on August 10, 2007, together with the subsequent amendments thereto.

73.     Mylan has at all times complied with its responsibilities and requirements under the Mylan/GSK Agreement, and its amendments.

74.     By willfully and intentionally ███████████████████████ ██████, GSK is in breach of the Mylan/GSK Agreement, and its amendments.

75.     By willfully and intentionally continuing to supply Apotex with the authorized generic of Paxil CR® after the jury verdict in the Prior Litigation, GSK is in breach of the Mylan/GSK Agreement, and its amendments.

76.     GSK's breach of the Mylan/GSK Agreement and the amendments thereto has and will cause irreparable harm to Mylan, including irretrievable loss of market share and customers of the generic paroxetine hydrochloride extended-release tablets.  Mylan's loss of generic market exclusivity and customer goodwill due to GSK's breach has resulted in harm to Mylan that is not compensable in monetary terms.

### X.     SECOND CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH THE AGREEMENT AGAINST APOTEX

77.     Mylan repeats the allegations contained in Paragraphs 1 through 76 above as if set forth fully herein.

78.     Although not a party to the Mylan/GSK Agreement, Apotex had actual knowledge of the Mylan/GSK Agreement, including Section 2 of the Second Amendment.

79.     Apotex had actual knowledge that t█████████████████████████ breaches the Mylan/GSK Agreement.

80.     Apotex, in spite of its knowledge of the Mylan/GSK Agreement and Mylan's rights thereunder, █████████████████████████████ █████████████████████████

81.     Furthermore, upon information and belief, Apotex also required that GSK supply Apotex with the authorized generic of Paxil CR®, despite its knowledge that such supply is unlawful and breaches the Mylan/GSK Agreement.  Apotex continued to sell the authorized generic of Paxil CR® to the downstream marketplace, even after having actual knowledge of the Mylan/GSK Agreement, Mylan's adjudicated rights thereunder, and a permanent injunction prohibiting further supply by GSK to Apotex.

HIGHLY CONFIDENTIAL

82.     Apotex made these demands of GSK and sales of the authorized generic of Paxil CR® intentionally, and knowing that the demand and sales would cause GSK to breach the Mylan/GSK Agreement, cause harm to Mylan, and interfere with the Mylan and GSK relationship.

83.     Upon information and belief, Apotex's actions are without justification or excuse and were taken with a wanton disregard for Mylan and its adjudicated rights under the Mylan/GSK Agreement.

84.     Mylan has suffered and will suffer harm due to Apotex's interference with the contractual relationship between Mylan and GSK and causing GSK to breach the Mylan/GSK Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets.  Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

## XI.     THIRD CAUSE OF ACTION: UNLAWFUL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST APOTEX

85.     Mylan repeats the allegations contained in Paragraphs 1 through 84 above as if set forth fully herein.

86.     Upon information and belief, Apotex, in spite of its knowledge of the Agreement and Mylan's rights thereunder, ███████████████████████████ ██████████████████████████████.

87.     Furthermore, upon information and belief, Apotex also required that GSK supply Apotex with the authorized generic of Paxil CR®, despite its knowledge that such

supply is unlawful and breaches the Mylan/GSK Agreement. Apotex continued to sell the authorized generic of Paxil CR® to the downstream marketplace, even after having actual knowledge of the Mylan/GSK Agreement, Mylan's adjudicated rights thereunder, and a permanent injunction prohibiting further supply by GSK to Apotex.

88.     Apotex made these demands of GSK and sales of the authorized generic of Paxil CR® intentionally, and knowing that the demand and sales would cause GSK to breach the Mylan/GSK Agreement with Mylan, cause harm to Mylan and interfere with the Mylan and GSK relationship.

89.     Apotex's actions constitute unjustified interference with Mylan's rights under the Mylan/GSK Agreement.

90.     Apotex's actions are without justification or excuse and go beyond generally accepted business standards.

91.     Mylan has suffered and will suffer harm due to Apotex's interference with the business relationship between Mylan and GSK and causing GSK to breach the Mylan/GSK Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets. Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

HIGHLY CONFIDENTIAL

XII.   **FOURTH CAUSE OF ACTION: UNLAWFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST APOTEX**

92.     Mylan repeats the allegations contained in Paragraphs 1 through 91 as if set forth fully herein.

93.     As a result of the Mylan/GSK Agreement, and Mylan's exclusive rights thereunder, Mylan had a reasonable expectation of economic benefit or advantage through at least July of 2016 (the expiration date of the '640 patent), including but not limited to monetary and economic benefit from the exclusive sale of its generic paroxetine hydrochloride extended release tablets.

94.     As a result of at least Third Circuit Decision and the Prior Contract Litigation, Apotex had actual knowledge of the Mylan/GSK Agreement, including Section 2 of the Second Amendment, and the exclusive rights conferred to Mylan thereunder.

95.     Apotex also had actual knowledge that Mylan expected to receive substantial monetary and economic benefit that the exclusivity provisions of the Mylan/GSK Agreement provided.

96.     Upon information and belief, through its demand that ████████████ ████████████████████ through its demand that GSK continue to supply Apotex with the authorized generic of Paxil CR®, and through its continued sale of the authorized generic of Paxil CR® to the downstream marketplace, Apotex has wrongfully and without justification interfered with the exclusive economic benefit that Mylan should have received under the Mylan/GSK Agreement.

97.     H██████████████████████████████████████ ████████ demanded that GSK continue to supply Apotex with the authorized generic of

Paxil CR® and continued sale of the authorized generic of Paxil CR® to the downstream marketplace, Mylan would have realized greater sales and profits for its paroxetine hydrochloride extended release tablets.

98.     Mylan has and will suffer harm due to Apotex's interference with Mylan's exclusivity under the Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets.  Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

**XIII.  FIFTH CAUSE OF ACTION: INDUCEMENT TO BREACH OF CONTRACT AGAINST APOTEX**

99.     Mylan repeats the allegations contained in Paragraphs 1 through 98 above as if set forth fully herein.

100.    Since entering into the Agreement, Mylan has successfully marketed, sold, manufactured and distributed generic paroxetine hydrochloride extended-release tablets in dosages of 12.5 mg, 25 mg and 37.5 mg, and this product has become one of Mylan's most successful.

101.    Apotex had actual knowledge of the Agreement and the amendments thereto, including actual knowledge that the Agreement and Amendments provided Mylan exclusive rights in the market for generic paroxetine hydrochloride extended-release tablets.

HIGHLY CONFIDENTIAL

102.    By virtue of the Prior Contract Litigation and the jury verdict, Apotex also had actual knowledge that its relationship with GSK for paroxetine hydrochloride extended-release tablets breaches the Mylan/GSK Agreement.

103.    Upon information and belief, despite knowing that under the Mylan/GSK Agreement Mylan has certain exclusive rights to the generic paroxetine hydrochloride extended-release tablets, and that the GSK and Apotex relationship unlawfully breaches the Mylan/GSK Agreement, Apotex intentionally caused GSK to breach the Agreement by, upon information and belief, d█████████████████████████████ ██████ and demanding that GSK continue to supply Apotex with paroxetine hydrochloride extended-release tablets.

104.    Apotex's aforementioned actions are knowing, intentional and without justification or excuse.

105.    Mylan has and will suffer harm due to Apotex's inducement of GSK to breach the Mylan/GSK Agreement, including lost profits, irretrievable loss of market share and customers, and price erosion of the generic paroxetine hydrochloride extended-release tablets.  Because Mylan is the only company to have an approved ANDA for generic paroxetine hydrochloride extended-release tablets, it is the sole lawful participant in the generic paroxetine hydrochloride extended-release tablet market, and the harm to Mylan from Apotex's unlawful actions is thus not compensable in monetary terms.

**PRAYER FOR RELIEF**

WHEREFORE, Mylan prays for judgment as follows:

a.    That GSK has breached the Mylan/GSK Agreement;

b.    That Apotex has maliciously, intentionally and tortiously interfered with the Mylan/GSK Agreement;

HIGHLY CONFIDENTIAL

c.      That Apotex unlawfully interfered with the Mylan/GSK Agreement;

d.      That Apotex has unlawfully interfered with Mylan's prospective economic advantage under the Mylan/GSK Agreement;

e.      That Apotex has maliciously, willfully and knowingly induced GSK to breach the Mylan/GSK Agreement;

f.      That GSK, its officers, agents, servants and employees and those persons in active concert or participation with any of them, be temporarily restrained and preliminarily and permanently enjoined from supplying Apotex with Paxil CR®, and from ██████████████████ ██████████████████████, including any regulatory exclusivities, of the '640 patent;

g.      That Apotex, its officers, agents, servants and employees and those persons in active concert or participation with any of them, be temporarily restrained and preliminarily and permanently enjoined from commercially manufacturing, developing, marketing, distributing, selling or offering for sale a generic or authorized generic paroxetine hydrochloride extended-release tablets;

h.      That any generic paroxetine hydrochloride extended-release tablets manufactured, developed, distributed, sold or offered for sale by Apotex after the date of the jury verdict be recalled;

i.      That Mylan be awarded monetary damages in an amount to be determined at trial;

j.      That Mylan be awarded its attorneys' fees and costs;

HIGHLY CONFIDENTIAL

k.      That Mylan be awarded punitive damages from Apotex; and

l.      That Mylan be awarded such other and further relief as this Court deems just and proper.

**XIV.   CERTIFICATION PURSUANT TO L.CIV.R. 11.2**

Plaintiffs, by their undersigned counsel, hereby certify pursuant to L. Civ. R. 11.2 that GSK and Apotex's actions in connection with the Agreement are not the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding.  The Prior Contract Litigation discussed above in paragraph 26 is a separate action pending in the United States District Court for the District of New Jersey, to which Apotex is not a party.

**XV.   DEMAND FOR JURY TRIAL**

Mylan hereby demands a trial by jury for all the issues so triable.

Dated:  September 16, 2014

Respectfully submitted,

MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

/s/ Wade G. Perrin

| | |
|---|---|
| John Michael Vazquez, Esq. | Wade G. Perrin, Esq. |
| **CRITCHLEY, KINUM & VAZQUEZ** | Michael E. Johnson, Esq. *(pro hac vice)* |
| 75 Livingston Avenue, 3rd Floor | Natalie C. Clayton, Esq. *(pro hac vice)* |
| Roseland, NJ 07068 | Christina Spiller *(pro hac vice)* |
| Telephone: (973) 422-9200 | Christopher L. McArdle *(pro hac vice)* |
| Facsimile: (973) 422-9700 | **ALSTON & BIRD LLP** |
| | 90 Park Avenue |
| -------and--------- | New York, NY 10016 |
| | Telephone: (212) 210-9400 |
| Frank G. Smith, III, Esq. *(pro hac vice)* | Facsimile: (212) 210-9444 |
| **ALSTON & BIRD LLP** | |
| 1201 West Peachtree Street | |

HIGHLY CONFIDENTIAL

Atlanta, GA 30309-3424
Telephone: (404) 881-7000

Facsimile: (404) 881-7777
*Attorneys for Plaintiffs Mylan Inc. and Mylan Pharmaceuticals Inc.*